IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
GEORGE GREEN,                 :      HON. JEROME B. SIMANDLE
                              :
            Plaintiff,        :      Civil No. 11-3116(JBS/JS)
                              :
      v.                      :
                              :
ISABELLA M. GREEN,            :         OPINION
                              :
            Defendant.        :
_____
```

APPEARANCES:

Mr. George Green, pro se
27 Thornwood Dr.
Glassboro, NJ 08028-3019

William M. Tambussi, Esq.
Kristin Lee Van Arsdale, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
     Attorneys for Defendant Isabella M. Green


**SIMANDLE**, Chief Judge:

I.  **INTRODUCTION**

    This matter is before the Court on the motion of Plaintiff George Green("Plaintiff" or "Mr. Green") to strike Defendant's legally insufficient affirmative defenses [Docket Item 19], the motion of Defendant Isabella M. Green ("Defendant" or "Mrs. Green") for summary judgment [Docket Item 20] and Plaintiff's cross motion for summary judgment [Docket Item 26].  For the reasons discussed herein, the court will grant Defendant's motion for summary judgment, deny Plaintiff's cross motion for summary

judgment and dismiss as moot Plaintiff's motion to strike Defendant's affirmative defenses.

The instant action arises out of the Defendant filing a motion in state court seeking to enforce her rights under a Qualified Domestic Relations Order to a percentage of the Plaintiff's retirement benefits.  Since the order at issue is a Qualified Domestic Relations Order as defined under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1056(d)(3), the Defendant's state law claims are not preempted by ERISA and Plaintiff's claims for declaratory and injunctive relief must be dismissed.


## II.   BACKGROUND

The Plaintiff and the Defendant were lawfully married on December 6, 1954.  (Def.'s Statement of Facts at ¶ 1.)  The Defendant subsequently filed for a divorce on December 11, 1990.  (Def.'s Statement of Facts at ¶ 1.)  A final judgment of divorce was entered on June 24, 1991.  (Def.'s Ex. E, Final Judgment of Divorce.)  The final judgment of divorce provided that the Defendant would be entitled to receive 45 percent of the Plaintiff's pension.  Specifically, the divorce order states:

> 4.  [Mrs. Green] shall be entitled to receive forty-five percent (45%) of the gross pension received by [Mr. Green] by virtue of his retirement with the United States Navy.  A Qualified Domestic Relations Order shall be drafted by counsel for [Mrs. Green].

2

> 5.   [Mrs. Green] shall be entitled to receive fifty
> percent (50%) of the gross pension enjoyed by [Mr. Green]
> by virtue of his retirement from the United States Postal
> Service.  A Qualified Domestic Relations Order shall be
> drafted by counsel for [Mrs. Green].

(Def.'s Ex. E, Final Judgment of Divorce, at ¶¶4-5.)

After multiple amendments, the final Qualified Domestic Relations Order was entered on February 22, 1993.  This order provides that Defendant Mrs. Green is the alternate payee of Plaintiff's benefits from the United States Postal Service/Civil Service Retirement System.  The order provides the full name and current and last known address of Plaintiff and lists the Plaintiff as the participant of the plan.  The order further provides the full name and current and last known address of the Defendant and lists her as the alternate payee.  The order states in pertinent part:

> 5C. This order applies to any and all monies receivable
> by the participant from the United States Postal
> Service/Civil Service Retirement System.  It shall also
> include and fully apply to and bind any successor plan or
> additional monies subsequently received by the
> participant.
>
> 5D. Allocated Percentage - The percentage of the gross
> retirement benefits of the participant which became the
> property interest of the alternate payee.  The alternate
> payee is entitled to receive directly from the pension a
> monthly annuity benefit payable until the earlier of her
> death or the death of the retirant.  This monthly payment
> to the alternate payee shall be forty-seven and one half
> percent (47.5%) of the base monthly gross retirement
> benefits payable to George Green as of June 24, 1991.
>
> 5E. In addition to that which is set forth in paragraph
> D, above, the alternate payee shall participate in all
> such increases/adjustments that are enjoyed by George

Green.  The property interest of the alternate payee and these increases/adjustments shall be fifty percent (50%) of all such increases/adjustments.

5F. Payment Beginning Date (for Alternate Payee) shall be earliest date subsequent to the qualification of this Domestic Relations Order when it is administratively possible for the United States Postal Service/Civil Service Retirement System to begin distribution of the alternate payee.

...

7.  This Order is entered pursuant to a Final Judgment of Divorce entered on the 24th day of June, 1991.  That Judgment has not been modified or otherwise changed. That Judgment of Divorce has been made pursuant to the Domestic Relation s [sic] law of the State of New Jersey, which governs the division of marital property between spouses.

8.  Since it is intended that this Order shall qualify as a Domestic Relations Order, the provisions hereof shall be administered and interpreted in conformity with ERISA and the Internal Revenue Code.  The Court shall retain jurisdiction to amend this Order only for purposes of establishing or maintaining its qualification as a Domestic Relations Order under ERISA and/or the Internal Revenue Code, and either party may apply to the Court for such amendment.

(Pl.'s Ex. E.)

This Qualified Domestic Relations Order was accepted by the United States Office of Personnel Management ("OPM") and the Defendant began and continues to receive monthly payments from the Plaintiff's pension plan.  (Pl.'s Answer to Def.'s Statement of Undisputed Facts at ¶11 and Pl.'s Counter Statement of Material Facts at ¶ 20.)

Sometime later, Mrs. Green learned that Plaintiff's pension had increased from $1,606 a month to $2,857 a month as a result

of Plaintiff's service in the Navy; however, she was not receiving an increased monthly payment.  In September 2009, Defendant applied to the Defense Finance and Accounting Service for her portion of the Plaintiff's Navy retirement pay pursuant to the Final Judgment of Divorce and Qualified Domestic Relations Order.  (Def.'s Statement of Facts at ¶ 12.)  The Defense Finance and Accounting Service informed the Plaintiff that his military retired pay was in "non-pay status" and therefore no funds were available for the Defendant.  (Def.'s Statement of Facts at ¶ 13.)

Consequently, the Defendant then filed a motion to enforce payment of the monies due to her from the Plaintiff's Navy pension in New Jersey state court.  (Def.'s Ex. G.)  The Plaintiff filed opposition to the motion and also filed a cross motion seeking an order preventing the Defendant from requesting any further form of relief or making any future claim to payment from his military pension.  (Def.'s Statement of Facts at ¶ 15.)  The Superior Court of New Jersey, Chancery Division-Family Part held that the Defendant was entitled to an increased monthly payment from Plaintiff's pension.  Specifically, the court found:

> Since [Mr. Green] retired from the U.S. Postal Service and was a civil service employee, his Navy pension, also deriving from the Federal Government, will never go into pay status.  There was a recalculation done of his Postal Pension to increase it to $2,857 per month to reflect the additional receipt of what would have been his Navy pension.  As such, he has realized an increase in his pension benefits from $1,606 to $2,857, a difference of

5

$1,251 of which [Mrs. Green] is entitled to 45% or $563.
(Def.'s Ex. H, March 16, 2010 Order of the Superior Court of New
Jersey, at ¶ 2.)   In reaching this decision, the trial judge
permitted oral argument by Mrs. Green and took testimony in Mr.
Green's absence and without notice to him.   (Def.'s Ex. A at 8.)

The Plaintiff, Mr. Green, then appealed the March 16, 2010
Order.  Because the defendant was deprived of the opportunity to
be heard, the Appellate Division reversed the trial court's March
16, 2010 order and remanded the matter for an evidentiary
hearing.  (Def.'s Ex. A, Green v. Green, No. A-3887-09T3 (N.J.
App. Div. March 16, 2011).

Following this remand, on May 31, 2011, the Plaintiff, Mr.
Green, filed the instant action in federal court against the
Defendant, Mrs. Green.  [Docket Item 1.]  The Plaintiff brings
two causes of action against Mrs. Green.  First, the Plaintiff
seeks declaratory and injunctive relief barring the Defendant's
claim in state court and challenging the jurisdiction of the
state court over Defendant's motion for an increased monthly
payment from his pension.  Specifically, the Plaintiff alleges in
his complaint that Mrs. Green's state court action is preempted
by ERISA.  Second, the Plaintiff brings a malicious prosecution
claim against Mrs. Green based on her filing a motion to enforce
the Final Judgement of Divorce and Qualified Domestic Relations
Order in state court.  Plaintiff seeks declaratory and injunctive

relief on both claims and argues that the federal court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as a result of ERISA preemption.

In addition to filing the instant action, the Plaintiff also removed the state court action to federal court on the basis of ERISA preemption and federal question jurisdiction.  See Green v. Green, No. 11-cv-3236-JBS-JS.  This action was then consolidated with the instant action for discovery and case management purposes.  See Green v. Green, No. 11-cv-3236-JBS-JS [Docket Item 5.]

Mrs. Green, Defendant in the present matter, filed the pending motion for summary judgment.[1]  Mrs. Green argues that Plaintiff's preemption claims fail as a matter law. Specifically, the Defendant maintains that her motion to enforce her rights under the parties' Final Judgment of Divorce and Qualified Domestic Relations Order is expressly exempt from ERISA preemption and does not seek to recover proceeds of a benefit plan governed by ERISA.  In addition, Defendant argues that

---

[1] Plaintiff initially argues that Defendant did not file her summary judgment motion as a writing in accordance with Fed. R. Civ. P. 7(b) and 10(b) and consequently, Defendant's motion should be dismissed.  This argument is meritless.  First, Fed. R. Civ. P. 10(b) applies to setting forth claims and defenses in pleadings, and is inapplicable to motions for summary judgment. Further, Defendant did present her motion as a writing and complied with the requirements of the Federal Rules of Civil Procedure as well as L. Civ. R. 7.1, 7.2 and 10.1(b).  Therefore, the court rejects this argument as a basis for denying Defendant's motion for summary judgment.

Plaintiff's malicious prosecution claim fails to establish the necessary elements to sustain a valid claim.

Plaintiff filed a motion to strike the Defendant's affirmative defenses and also filed a cross motion for summary judgment.  The Plaintiff argues that the February 1993 order is not a Qualified Domestic Relations Order for purposes of ERISA preemption and this order does not provide for payment to Mrs. Green from his Navy pension.  Further, the Plaintiff maintains that he has sufficiently provided evidence to support his claim for malicious prosecution.

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable

inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

## B. Analysis

### 1. ERISA Preemption

The Defendant argues that Count I of Plaintiff's complaint seeking a declaration that Mrs. Green's motion in state court for increased payments from Plaintiff's pension plan is preempted by ERISA should be dismissed.  The Defendant argues that Mrs. Green sought to enforce her rights in state court pursuant to the Final Judgment of Divorce and the subsequent Qualified Domestic Relations Order ("QDRO") which is permitted under ERISA. Specifically, the Defendant maintains that ERISA expressly exempts QDRO's from preemption and that litigation involving the terms and enforcement of a QDRO is properly brought in state court.  Therefore, the Defendant contends that summary judgment is appropriate to dismiss this count.

The Plaintiff maintains that Defendant's enforcement action in state court is preempted by ERISA.  In particular, the Plaintiff argues that the Defendant, in seeking relief from state court, did not expressly mention the QDRO in her complaint and rather, stated that she was seeking enforcement of alimony in the

amount of 45 percent of Defendant's Navy pension per the June 24, 1991 Final Judgment of Divorce. See Green v. Green, No. 11-cv-3236(JBS/JS) [Docket Item 1-1].  Second, the Plaintiff maintains that there is a genuine issue of material fact as to whether Plaintiff receives a Navy pension or if his pension is limited to his service in the United States Postal Service.  Therefore, the Plaintiff maintains that summary judgment should be granted as to his claim in Count I or in the alternative, there is a genuine issue of material fact preventing summary judgment for the Defendant.

The main issue before the court is whether the February 1993 order is a Qualified Domestic Relations Order as defined under ERISA and whether Mrs. Green's state lawsuit is preempted.

Prior to 1984, ERISA prohibited the alienation or assignment of pension plan benefits.  See 29 U.S.C. § 1056(d)(1).  In 1984, Congress amended ERISA by enacting the Retirement Equity Act ("REA") which allowed a participant to alienate or assign pension benefits under a domestic relations order so long as the order is "determined to be a qualified domestic relations order."  See 29 U.S.C. § 1056(d)(3)(A).

"In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the 'spouse, former spouse, child or other dependent of a participant,' is to be considered a plan beneficiary."  Boggs v. Boggs, 520 U.S. 833, 847 (1997).

"QDRO's, unlike domestic relations orders in general, are exempt from both the pension plan anti-alienation provision, § 1056(d)(3)(A), and ERISA's general preemption clause, § 1144(b)(7)." Id. at 846-47.  "These provisions are essential to . . . give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death [of] the surviving spouse." Id.

Whether a domestic relations order qualifies as a QDRO under ERISA is a question of statutory construction. Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 282 (3d Cir. 2007).  Under ERISA, a QDRO is a type of domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan."  29 U.S.C. § 1056(d)(3)(B)(i)(I).  A "domestic relations order" is defined as "any judgment, decree, or order (including approval of a property settlement agreement) which relates to the provision of child support, alimony payments or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and is made pursuant to a State domestic relations law (including community property law)." 29 U.S.C. § 1056(d)(3)(B)(ii)(I)-(II).

A domestic relations order must specify the following four items to be considered a QDRO under ERISA:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined.
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C)(i)-(iv).  In addition, a QDRO must not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan, must not require the plan to provide increased benefits, and must not interfere with required payments under a previously approved QDRO.  See 29 U.S.C. § 1056(d)(3)(D).

In this case, the February 1993 order satisfies all the requirements of a QDRO under ERISA.  It provides the name and last known mailing address of the Plaintiff, as the participant and the Defendant, as the alternate payee.  It clearly states that Mrs. Green, as the alternate payee, is to receive 47.5 percent of Plaintiff's monthly pension payments.  The order specifies that these payments are to be made retroactively from June 24, 1991 until either the Plaintiff or Defendant deceases. Finally, the order is clear that it "applies to any and all monies receivable by the participant from the United States Postal Service/Civil Service Retirement System.  It shall also

12

include and fully apply to and bind any successor plan or
additional monies subsequently received by the participant."
(Pl.'s Ex. E at ¶5C.)

Furthermore, the February 1993 order does not provide any
type or form of benefit, or any option, not otherwise provided
under the plan, does not require the plan to provide increased
benefits, and does not interfere with required payments under a
previously approved QDRO, as there are no previous QDRO's at
issue in this case.

Therefore, the court is satisfied that the February 1993
order is a QDRO under ERISA and therefore, any actions to enforce
this order are expressly exempt from ERISA's broad preemption
provision.  See 29 U.S.C. § 1144(b)(7)(stating that ERISA's
preemption provision at 29 U.S.C. § 1144(a) does not apply to
qualified domestic relations orders).

To the extent that Plaintiff argues that 29 U.S.C. § 1132(a)
applies to completely preempt Defendant's state law motion, this
argument is unpersuasive.  Under Section 1132(a), a participant
or beneficiary may bring a civil enforcement action to recover
benefits due to him under the terms of his plan, to enforce his
rights under the terms of the plan, or to clarify his rights to
future benefits under the terms of the plan.

In this case, Mrs. Green is not seeking to recover benefits
under the terms of the plan, enforce her rights under the terms

of the plan or to clarify her rights to future benefits under the terms of the plan pursuant to Section 1132(a).  Rather, Mrs. Green is seeking to force the Plaintiff to comply with the terms of their Final Judgment of Divorce and February 1993 QDRO because Plaintiff was allegedly concealing his increased pension from Mrs. Green and failed to pay her the percentage agreed to under the terms of their divorce judgment and QDRO.  The compensation Mrs. Green seeks is compliance by the Plaintiff with a state domestic relations order, not benefits paid to her as a result of an ERISA plan.

The Supreme Court has clearly held that the domestic relations of a husband wife are governed by state, not federal law.  Boggs v. Boggs, 520 U.S. 833, 847-48 (1997).  "Support obligations, in particular, are 'deeply rooted moral responsibilities' that Congress is unlikely to have intended to intrude upon."  Id. at 848.  Consequently, the Supreme Court explained that "Congress ensured that state domestic relations orders, as long as they meet certain statutory requirements, are not preempted" by ERISA.  Id.

ERISA does not create substantive rights for a divorcing party; rather, ERISA "accommodates, by the provisions governing QDROs, rights created by state matrimonial law."  Edmonds v. Edmonds, 710 N.Y.S. 2d 765, 768 (Sup. Ct. 2000).  "Importantly, ERISA does not create or afford a former spouse any substantive

14

rights, and a divorcing spouse's right to a property interest in pension benefits arises only by operation of state marital property law." Critchell v. Critchell, 746 A.2d 282, 287 (D.C. 2000).  The Third Circuit explained:

> Congress was concerned that the combination of ERISA's sweeping preemption of state law, 29 U.S.C. § 1144(a), and the provisions of REA would result in needless federal interference with state domestic relations laws. Congress avoided this potential comity problem by exempting qualified domestic relations orders from ERISA preemption.  See 29 U.S.C. § 1144(b)(7).  In other words, to the extent REA is silent concerning qualified domestic relations orders, state courts will issue them in accordance with state law.

Samaroo v. Samaroo, 743 F. Supp. 309, 312-13 (3d Cir. 1990).

In this case, it is clear Mrs. Green filed her motion in state court seeking to enforce her rights under the Final Judgment of Divorce and QDRO.  These claims do not arise under ERISA and are not claims seeking a benefit due to her under the terms of an ERISA plan.  Rather, these are claims arising under the state domestic relations law governing the Final Judgment of Divorce and QDRO.  Specifically, Mrs. Green seeks to recover funds which are due to her as a result of the division of marital property and assets set forth in the Final Judgment of Divorce and QDRO.  Mrs. Green's claim to enforce these rights arises under New Jersey state domestic relations law, not ERISA.

As further evidence that Mrs. Green sought to enforce her rights under the state domestic relations law underlying her divorce order and QDRO, the court notes that Mrs. Green did not

15

join the plan as a Defendant in the underlying state enforcement proceeding and did not sue in her capacity as an alternate payee under the plan but rather brought suit directly against the Plaintiff in her capacity as Plaintiff's ex-wife.

Accordingly, Mrs. Green's motion was properly brought in New Jersey Superior Court, Family Division and Section 1132(a) does not apply to completely preempt her claim.

The remaining issue before the court is Plaintiff's argument that Mrs. Green's motion filed in state court under her divorce docket was in essence a motion to enforce the Final Judgment of Divorce and did not involve the QDRO.  The Plaintiff maintains that if the underlying state court action did not involve enforcement of the QDRO, then the exception to ERISA preemption does not apply.  For the reasons explained below, the court finds this argument unpersuasive and concludes that Mrs. Green's motion in state court was a motion to enforce the terms of the QDRO and therefore exempt from ERISA's preemption provisions.

First, the court must note that Mrs. Green filed the underlying motion in state court pro se.  It is well established that when construing a pleading filed by a pro se litigant, the court must be mindful to construe it liberally in favor of the plaintiff.  Erickson v. Pardus, 551 U.S. 89 (2007).  While this principle is typically applied in evaluating the sufficiency of a complaint filed in federal court by a pro se litigant, the court

16

finds it applicable in this action in determining whether Mrs. Green's state court motion involved the enforcement of the February 1993 QDRO.

In her motion papers, Mrs. Green specifies that she was seeking "enforcement of alimony in the amount of 45% of Defendant's Navy pension per order 6-24-1991."  Defendant further clarifies that she had "never received my 45% entitlement of Defendant's Navy pension" and that Defendant's "total postal and naval pension is $2857.00."  See Green v. Green, No. 11-cv-3236(JBS/JS) [Docket Item 1-1].

The Final Judgment of Divorce entered on June 24, 1991, clearly contemplates the parties' division of Plaintiff's pension benefits and expressly states that this division is to be accomplished through the subsequent adoption of a Qualified Domestic Relations Order. (Def.'s Ex. E, Final Judgment of Divorce, at ¶¶4-5.)  Further, the February 1993 QDRO expressly states that it was entered pursuant to the Final Judgment of Divorce entered on the 24th day of June, 1991. (Pl.'s Ex. E ¶ 7.)

Accordingly, while Mrs. Green does not specify in her complaint that she is seeking to enforce the February 1993 QDRO, she clearly states that she is seeking to enforce her rights to a percentage of Plaintiff's pension and these rights are articulated in the Final Judgment of Divorce which authorized the entry of the QDRO at issue.  Therefore, the court is satisfied

17

that Mrs. Green filed the instant state court action seeking to enforce her rights under the Final Judgment of Divorce and the QDRO and this action, as discussed above, is not preempted by ERISA.

Finally, the Plaintiff argues summary judgment should be denied because there is an issue of fact about whether a Navy pension exists and whether the QDRO entitles Mrs. Green to a portion of Plaintiff's naval pension. This fact is not material to deciding Plaintiff's claim for declaratory judgment as to whether Mrs. Green was entitled to file the underlying state court action, which this court has determined is not preempted by ERISA. Rather, this is a fact integral to the interpretation of the QDRO and Mrs. Green's rights thereunder. From the record, it appears that Plaintiff's postal pension increased from $1,606 to $2,857 a month as a result of Plaintiff's service in the Navy. Since the Plaintiff retired from the United States Postal Office, his pension derives from the federal government, and therefore any pension he could have received from his Navy service is in non-pay status. Consequently, as the Plaintiff could not receive a separate Navy pension, it appears from the record that his postal pension was increased to reflect his additional time spent serving the federal government. Whether Mrs. Green is entitled to a percentage of this increase under the February 1993 QDRO is a matter for the state court in interpreting the scope of the

parties' divorce agreement and support obligation, as explained above, and not a subject of this motion for declaratory relief.

Therefore, summary judgment is appropriate to dismiss Count I of Plaintiff's complaint which seeks declaratory judgment that Defendant's claim for increased monthly payments from Plaintiff's pension is preempted.  The February 1993 order is a Qualified Domestic Relations Order as defined by ERISA and exempted from ERISA preemption pursuant to 29 U.S.C. 1144(a) and (b). Accordingly, the Defendant was entitled to file the underlying state court motion and Plaintiff's claim for declaratory relief will be dismissed.

### 2. Malicious Prosecution Under Color of Law

In Count II of his complaint, Plaintiff alleges a claim of "malicious prosecution under color of law by Defendant" as a result of the Defendant's filing her initial motion to enforce payment pursuant to the Final Judgment of Divorce in state court. As Plaintiff's complaint is ambiguous as to whether he is bringing his malicious prosecution claim under 42 U.S.C. § 1983 or state tort law, the court will briefly address both potential claims.  For the reasons stated below, summary judgment is appropriate to dismiss Plaintiff's malicious prosecution claim.

To the extent Plaintiff is seeking to sue Mrs. Green under 42 U.S.C. § 1983 for malicious prosecution, this claim must be dismissed as Mrs. Green was not acting under the color of state

19

law in filing the underlying state court enforcement motion.  See
Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir.
2008)("Under Section 1983, a plaintiff must plead a deprivation
of a constitutional right and that the constitutional deprivation
was caused by a person acting under the color of state law.").
In this case, it is clear Mrs. Green was acting as a private
citizen, filing the underlying motion to enforce her rights under
the Final Judgment of Divorce and subsequent QDRO, and was not
acting under the color of state law.  Therefore, any claim under
Section 1983 must fail.

Further, to the extent that Plaintiff is bringing a tort
claim for malicious use of process, this too must be dismissed.
In order to establish a claim for malicious use of process, the
civil equivalent of a malicious prosecution claim, a plaintiff
must satisfy five elements: (1) defendant instituted the civil
action against the plaintiff; (2) defendant was motivated by
malice; (3) defendant lacked probable cause; (4) the civil action
terminated favorably to the plaintiff; and (5) plaintiff suffered
a special grievance.  See LoBiondo v. Schwartz, 199 N.J. 62, 90
(N.J. 2009).

The special grievance requirement "is designed to take the
place of the injurious effects, including arrest, restraint, or
the attendant humiliation of being held on bail, finger-printed,
and photographed, that ordinarily flow from a wrongfully

20

instituted criminal charge." Id.  New Jersey courts have held
"the minimal impact of the commencement of civil litigation is
insufficient on its own to demonstrate an injury." Id. at 90-91.

"The tort of malicious use of process is disfavored out of
fear that its use could chill free access to the courts."
Turner v. Wong, 363 N.J. Super. 186 (App. Div. 2003).  It may
only be asserted to "abide the favorable resolution of the
litigation to which it responds." LoBiondo, 199 N.J. at 72.

In this case, the Plaintiff has failed to set forth
sufficient evidence to establish a malicious use of process
claim.  Most importantly, the Plaintiff has failed to establish
that the underlying civil action terminated in his favor.
Specifically, the state court action was remanded by the
Appellate Division for further proceedings and subsequently
removed by the Plaintiff to federal court.  This action remains
pending and active on the court's docket.  Therefore, since the
Plaintiff has failed to establish this crucial element of his
claim, summary judgment is appropriate.

Accordingly, Count II of Plaintiff's complaint will be
dismissed.

### 3. Plaintiff's Motion to Strike

As the court has granted Defendant's motion for summary
judgment, Plaintiff's Motion to Strike Defendant's Affirmative
Defenses is now moot.  Therefore, the court will dismiss this

motion.

### 4. Viability of Related Action

The court is aware that the underlying state court action which is the subject of the instant motion was removed to federal court and pending on the court's docket.  See Green v. Green, No. 11-cv-3236(JBS/JS).  As a result of today's opinion, the court must address whether it has subject matter jurisdiction over this related action.  Therefore, the court will order the parties to show cause why this related action should not be remanded to state court.

### IV.  CONCLUSION

For the reasons discussed above, the Defendant's motion for summary judgment will be granted and the Plaintiff's cross motion for summary judgment will be denied.  The Defendant's underlying motion to enforce her right to payment pursuant to her Final Judgment of Divorce and Qualified Domestic Relations Order is not preempted by ERISA and therefore, Plaintiff's claim for declaratory relief will be dismissed.  In addition, the Plaintiff has failed to establish a cause of action for malicious prosecution as he has not established that the underlying civil action terminated in his favor.  Indeed, the action was removed to federal court and remains pending on this court's docket.

Since the court has granted the Defendant's motion for

summary judgment, there is no need to reach Plaintiff's motion to strike Defendant's affirmative defenses.  Therefore, this motion will be dismissed as moot.

Finally, as a result of today's opinion, the court must address whether it has subject matter jurisdiction over the parties' related action, <u>Green v. Green</u>, No. 11-cv-3236(JBS/JS).[2] The court will issue an order to show cause in the related action as to whether the court has subject matter jurisdiction over this dispute.  The accompanying Order will be entered.


| September 24, 2012 | s/ Jerome B. Simandle |
| Date | JEROME B. SIMANDLE |
|  | Chief U.S. District Judge |

---

[2] The court may raise the issue of subject matter jurisdiction on its own pursuant to Rule 12(h)(3), Fed. R. Civ. P., which provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Mr. Green removed the related action from the Superior Court of New Jersey to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, arguing that Mrs. Green's state court action was preempted by ERISA.  In the present suit, this court has determined that Mrs. Green's effort in state court is not preempted by ERISA, because it arises from enforcement of a valid QDRO under state law, as explained above. This court would have no basis under federal law for maintaining federal question jurisdiction in No. 11-cv-3236.  Mr. Green, as the party who removed that case, has the burden of proving that this federal court has jurisdiction over the subject matter.  Mr. Green will have the opportunity to make this jurisdictional showing in response to the Order to Show Cause being entered in that companion case today.